**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 23, 2022

Peter J. Walsh, Jr., Esquire
Kevin R. Shannon, Esquire
Christopher N. Kelly, Esquire
Mathew A. Golden, Esquire
Callan R. Jackson, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Brad D. Sorrels, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

Edward B. Micheletti, Esquire
Lauren N. Rosenello, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 N. King Street, 7th Floor
P.O. Box 636
Wilmington, DE 19899-0636

Re: *Twitter, Inc. v. Elon R. Musk et al.*,
C.A. No. 2022-0613-KSJM

Dear Counsel:

This letter decision resolves Twitter, Inc.'s August 15, 2022 request for relief in connection with the responses and objections to document requests and interrogatories of Defendants Elon R. Musk, X Holdings I, Inc. and X Holdings II, Inc. ("Defendants"), which this decision refers to as Twitter's "First Discovery Motion."

Through its First Discovery Motion, Twitter seeks five forms of relief. First, Twitter asks the court to deem Defendants' objections waived due to Defendants' obfuscatory discovery conduct. Second, Twitter seeks to compel Defendants to identify all sources of relevant information. Third, Twitter moves to compel Defendants to provide discovery

related to Musk's potential co-investors. Fourth, Twitter moves to compel Defendants to produce their communications with any governmental authorities. Last, Twitter asks the court to order Defendants to produce documents on a rolling basis. This letter decision addresses Twitter's requests in that order.

As its first and most general request, Twitter urges the court to hold that Defendants waived their objections to multiple discovery requests by engaging in obfuscatory discovery tactics. This request is denied.

Court of Chancery Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."[1] "[P]retrial discovery rules are to be afforded broad and liberal treatment."[2] "Discovery is called that for a reason. It is not called 'hide the ball.'"[3] If a party objects to providing discovery, "[t]he burden [] is on the objecting party to show why and in what way the information requested is privileged or otherwise improperly requested."[4] "Generic and formulaic objections are insufficient."[5] A generic objection "makes it impossible to determine what information a party has agreed to provide and

---

[1] Ct. Ch. R. 26(b)(1).

[2] *Levy v. Stern*, 687 A.2d 573, 1996 WL 742818, at *2 (Del. Dec. 20, 1996) (TABLE).

[3] *Klig v. Deloitte LLP*, 2010 WL 3489735, at *7 (Del. Ch. Sept. 7, 2010).

[4] *Van de Walle v. Unimation, Inc.*, 1984 WL 8270, at *2 (Del. Ch. Oct. 15, 1984).

[5] *In re Oxbow Carbon LLC Unitholder Litig.*, 2017 WL 959396, at *1 (Del. Ch. March 13, 2017) (internal quotation marks omitted).

whether the response is complete."[6]  Generally, therefore, a general objection "amounts to a waiver of the objections that purportedly were preserved."[7]

Invoking these principles here, Twitter argues that Defendants' efforts to respond to discovery fell woefully short.  This letter does not recount each deficiency identified in Twitter's First Discovery Motion.  It suffices to say that Defendants' discovery conduct has been suboptimal.  For example, Defendants refused to produce documents in response to eight of Twitter's document requests on the grounds that the materials sought are "not relevant to the parties' claims and/or defenses."[8]  Generally, Defendants cannot refuse to respond to a discovery request because they have unilaterally deemed the request irrelevant.[9]  The requests sought obviously relevant information in any event.[10]

Tacitly conceding the overly aggressive nature of their original responses, Defendants appear to have walked back most of their initial objections.[11]  At this stage, the court is willing to credit Defendants for arriving at more reasonable fallback positions and not issue the generalized punishment Twitter seeks for Defendants' unreasonable opening

---

[6] *Id.* at *2.

[7] *Id.*

[8] C.A. No. 2022-0613-KSJM, Docket ("Dkt.") 159 ("Pl.'s First Disc. Mot.") Ex. D at 11, 15–16, 19–20, 23, 26.

[9] *See Zachman v. Real Time Cloud Servs., LLC*, C.A. No. 9729-VCG, at 25 (Del. Ch. Mar. 5, 2019) (TRANSCRIPT) (observing that a party "can't just make up [their] mind that [they] don't think something's relevant" or make their own "ruling about relevance and discoverability").

[10] *See* Pl.'s First Disc. Mot. at 10 n.1 (restating the text of the requests at issue).

[11] *E.g., id.* at 8.

stances. Twitter may renew its generalized request in the event Defendants' behavior persists.

As its second request for relief, Twitter seeks to compel Defendants to identify sources of relevant information.[12] This request is granted.

Twitter's Interrogatory Nos. 1, 2, 12, and 17 asked Defendants to identify persons with knowledge of or involvement in key issues and events.[13]

In response, Defendants objected to these interrogatories as "overbroad and as seeking information not relevant to the parties' claims and defenses,"[14] self-limited their response to persons with "unique knowledge,"[15] and listed 41 persons or entities they considered to possess such unique knowledge in response. By the unique-knowledge qualifier, Defendants appear to intend to exclude at a minimum "friends and acquaintances with whom Mr. Musk may have had passing exchanges regarding Twitter or the Merger in general terms" from their list.[16] Twitter suggests that Defendants' unique-knowledge qualifier is also intended to exclude from discovery the identify of "advisors to" certain listed individuals and entities and "representatives of Musk who participated in diligence sessions, other advisors or consultants to Musk, and other individuals and entities with

---

[12] Pl.'s First Disc. Mot. at 14.

[13] Pl.'s First Disc. Mot. Ex. B at 10–11; Pl.'s First Disc. Mot. Ex. C at 14–16.

[14] Pl.'s First Disc. Mot. Ex. E at 6–13; 15.

[15] *Id.* at 7.

[16] Dkt. 176 ("Opp'n to Pl.'s First Disc. Mot.") at 16–17.

whom Mr. Musk communicated about the deal."[17]   Defendants argue that any further information "would not be remotely proportionate to the needs of the case,"[18] particularly since Defendants did not object to producing texts (and presumably other communications) with friends and acquaintances that are responsive to Twitter's discovery requests.

Even assuming that Musk has many friends and family members, Defendants' breadth, burden, and proportionality arguments ring hollow.  It is difficult to conclude, for example, that requiring Defendants to respond to an ordinary-course interrogatory listing persons with knowledge, even if those persons have duplicative knowledge, is disproportionate to the needs of any case, particularly a case that concerns a $44 billion merger.

Defendants shall supplement their interrogatory responses to identify all persons with knowledge of or involvement in key issues and events, regardless of whether that knowledge is "unique" or duplicative.[19]

As its third request for relief, Twitter seeks to compel Defendants to respond to discovery requests related to Musk's co-investors.  This request is granted.

---

[17] Pl.'s First Disc. Mot. at 15.

[18] *Id.* at 18.

[19] Defendants suggest that Musk should not be expected to know the identities of advisors to third parties.  If he does not know their identities, then he need not provide them.  If he does, then he must.

Twitter requested documents relating to Defendants' communications with actual and potential co-investors.[20]

In response, Defendants objected to the definition of "co-investors" as overly broad. Defendants initially limited the definition to "include only those investors who executed commitment letters."[21] Defendants later expanded their definition to include "persons who [executed] an NDA with Defendants with respect to a potential investment in Twitter."[22] Defendants argue that "the parties who executed NDAs would be the only parties having significant, substantive discussions with Defendants regarding a potential investment,"[23] and that a further expanded definition would impose undue burden on Defendants.

As Twitter observes, Defendants' logic is faulty, given that Musk himself committed to a $44 billion transaction without first executing an NDA. And Defendants' burden arguments seem implausible, given that Defendants have agreed to search the files of only two custodians. Even if Defendants were to search every document of their two custodians from January 1 to present, it seems unlikely that their burden would exceed that associated with Twitter's 42 custodians. In any event, Delaware law requires the party

---

[20] Pl.'s First Disc. Mot. Ex. A at 15, 17–20, 21, 25; Pl.'s First Disc. Mot. Ex. B. at 10–11.

[21] Pl.'s First Disc. Mot. Ex. D at 4; Pl.'s First Disc. Mot. Ex. E at 4.

[22] Pl.'s First Disc. Mot. Ex. K at 12.

[23] *Id.*

objecting on burden grounds to explain the burden with some level of specificity;[24] Defendants have not done so here.

As its fourth request for relief, Twitter seeks to compel Defendants to produce their communications, if any, regarding the merger, the merger agreement, the proxy statement, or Twitter, concerning government investigations. This request is denied as premature.

Twitter's Document Request No. 18 seeks production of all communications with any governmental authority concerning the merger, the merger agreement, the proxy statement, or Twitter, and all documents and communications relating to such communications.

In response, Defendants agreed to produce "communications with government entities regarding the topics list in [Request] No. 18," but objected to providing "documents concerning government investigations . . . on the basis that investigations by the U.S. Securities and Exchange Commission [the "SEC"] are non-public and confidential."[25]

Twitter argues that documents in the possession of private parties are not subject to the investigative privilege and, in the alternative, that Defendants lack standing to invoke

---

[24] *See Wood v. U.S. Bank Nat'l Ass'n*, 246 A.3d 141, 150 (Del. Ch. 2021) ("In this court, requests for documents 'relating to' a particular topic are customary. The term itself is not objectionable. A request might use this formulation in an overly broad or unduly burdensome manner, but the objecting party must then respond by explaining its objection with specificity and proposing a reasonable narrowing of the request."); *In re Aerojet Rocketdyne Hldgs., Inc.*, 2022 WL 145228, at *2 (Del. Ch. May 9, 2022) (finding that "some credible showing of burden must be advanced" by the party objecting to a discovery request as overly burdensome).

[25] Pl.'s First Disc. Mot. Ex. D at 20.

the investigative privilege. There is little Delaware authority addressing the investigative privilege. Federal cases have held that the investigative privilege "exists to encourage and shield the efforts of law enforcement and regulatory agencies to obtain information without fear of premature disclosure to those under investigation."[26] Courts have applied this privilege to protect from discovery "analyses or opinions" of investigative bodies but not "factual or statistical data" collected in the investigation.[27] In this way, the investigative privilege invokes a distinction similar to that drawn in this state between so-called "factual work product" and "opinion work product."[28] Given its doctrinal purpose, it would seem unusual that documents in the possession of a private party could be subject to the investigative privilege or that a private litigant would have standing to assert that privilege.[29]

Although the court is skeptical of Defendants' ability to assert the investigative privilege, the court need not reach the issue on the present posture. In their August 18

---

[26] *SEC v. McGinn*, 2011 WL 13136028, at *6 (N.D.N.Y. Jan. 5, 2011).

[27] *Ross v. Bolton*, 106 F.R.D. 22, 24 (S.D.N.Y. 1985).

[28] *See, e.g.*, *Saito v. McKesson HBOC, Inc.*, 2002 WL 31657622, at *11 (Del. Ch. Nov. 13, 2002) ("[T]here are two types of work product: non-opinion (factual/historical) work product and opinion work product. Each type of work product has its own standard of protection under Delaware law.").

[29] *See Legent Gp. v. Axos Fin. Inc.*, 2021 WL 4514930, at *1–2 (Del. Ch. Oct. 2, 2021) (expressing skepticism that a private litigant would possess information subject to an investigative privilege but declining to reach the question of whether a private litigant would have standing to assert the privilege); *LaMorte v. Mansfield*, 438 F.2d 448, 451 (2d Cir. 1971) (affirming an order compelling a party in a civil action to produce a transcript of that party's SEC testimony, finding that no privilege could attach to the information in the possession of a private party).

response to Twitter's First Discovery Motion, Defendants stated that they "do not yet know whether they possess materials that might be the subject of an investigative privilege asserted by a governmental authority."[30]  If Defendants assert the investigative privilege to withhold any documents, then Twitter may renew this request.

As its last request for relief, Twitter asks the court to order Defendants to produce documents promptly and on a rolling basis.  This request is denied.

Twitter had produced just over 3,000 documents by the time they filed their First Discovery Motion.  Defendants had produced only 619 documents.  Based on this comparison, Twitter argues that Defendants are intentionally slow rolling their production.

Defendants respond that they are working diligently to review and produce responsive documents from their two custodians, will continue to do so, and will meet the August 29 deadline for substantial completion.  The court accepts this representation at face value and denies the motion for relief.

In conclusion, Twitter's request that the court hold that Defendants waived their objections to multiple discovery requests by engaging in obfuscatory discovery tactics is denied.  Twitter's request to compel Defendants to identify persons with knowledge of or involvement in key issues and events is granted.  Twitter's request to compel Defendants to respond to discovery requests related to Musk's co-investors is granted.  Twitter's request to compel Defendants to produce their communications, if any, regarding the

---

[30] Opp'n to Pl.'s First Disc. Mot. at 23.

merger, the merger agreement, the proxy statement, or Twitter, with government authorities is denied as premature. Twitter's request that the court order Defendants to produce documents promptly and on a rolling basis is denied.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:    All counsel of record (by *File & ServeXpress*)